## THE GREENWICH.

(District Court, E. D. New York. March 15, 1912.)

COLLISION (§ 96*)—TUGS AND TOWS—TUG PASSING FROM SLIP.

The tug McGuirl came out of a slip on North River with tows, when the tug Greenwich, which had just taken two barges from another tow, near the end of the piers, was holding them against the ebb tide and working out into the river. The McGuirl gave the slip signal and also a signal of one whistle, but in attempting to cross the bows of the Greenwich was carried by the tide against one of her tows. Held, on the evidence, that both tugs were in fault; the McGuirl for not waiting until the Greenwich was out of the way, and the latter for occupying the river in such a way that she could not recognize a proper signal.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

In Admiralty. Suit by the Shamrock Towing Company, as owner of the steam tug McGuirl, against the steam tug Greenwich. Decree for libelant for half damages.

Foley & Martin, for libelant.
James J. Macklin, for claimant.

CHATFIELD, District Judge (orally at close of trial). On the 17th day of August, 1911, when the accident occurred off Fifty-Third street, North River, the ebb tide was running down past the ends of the piers at the rate of three or four miles an hour. The Cornell tow seems to have consisted of at least three tiers, and it would seem that there must have been three boats in a tier, even if the captain of the McGuirl has never known of such a tow. But that does not affect the situation. If there were not three boats in each tier, taking the Greenwich's and the Pelham's boats out from the position from which they came would have let some of the other boats go down the river, and that is hardly possible. The Cornell tow was brought to the neighborhood of the end of the Fifty-Fourth street pier, and whether or not the tugboat which had brought the Cornell tow down the river was up at the end of 50 fathoms of hawser, or down near the head of the tow, makes no difference, as the relative position of the tow is the same. The last tier of boats reached below the Fifty-Fourth street pier, and probably well down toward Fifty-Third street; otherwise it would not have been necessary for the McGuirl to push the Cornell tow to one side in order to get out from the slip.

It is apparent that the McGuirl and her scows, on a 150-foot hawser,

coming out of the slip, would have had to head up river against the tide, substantially as the captain of the McGuirl says, in order to get around the end of the Cornell tow; and I think it appears that he would not feel, at that position, the full effect of the tide until he did clear the stern of the port barge in the last tier of the Cornell tow. In the meantime the Greenwich had been up inside of the Cornell tow and taken out the two scows which were on the port side of the Greenwich, and which according to her captain, and according to the necessities of the situation, had lines out to the Greenwich.

The original proposition that one of the boats was not in tow at the time is without foundation. The Pelham had already taken away the middle boat from the second tier of the tow, and neither the Pelham nor that boat enter into the situation. The Greenwich, in order to make up her tow, to go downstream with the ebb tide, not only had to drop back, but to work out to the westward, so as to get her boats headed downstream and get out her hawser, and at the same time had to avoid having the boats drift down against the Fifty-Second street pier. The Greenwich, therefore, worked her engines at intervals so as to prevent the drift of the tide, and in order to work across the tide out into the river. According to her own captain, she had reached a point within a few feet of the Fifty-Second street pier at the time of the occurrence. The two boats in tow of the Greenwich would have reached from the Fifty-Second street pier up to Fifty-Third street, and substantially to the north side of what would have been the Fifty-Third street pier if it had been built, and the possible opening through which the McGuirl could pass would not have been at the most more than sufficient to let her through.

I think the testimony shows plainly that whistles were blown, one as a slip-signal and then later a short single-whistle followed by an alarm. These two whistles were evidently interpreted by those on the Greenwich to be a two-whistle signal to cast off the hawser. In fact, the interchange of vocal orders indicates the same thing. The McGuirl called to the Greenwich to go back, the Greenwich told the McGuirl to keep out of the way, and the McGuirl, about the same time or just after the moment of collision, ordered her hawsers cast off. I do not think that these orders throw much light upon the situation, but probably each witness is stating it as he recollects it.

The Greenwich evidently did not have power to work up any great distance nor at any substantial speed against the tide, nor did she have power to stop the way of the boats when they were in motion except with considerable effort, after several minutes work; hence it is impossible to hold that the Greenwich moved any considerable distance upstream. Her movements, however, to port, and holding against the ebb tide, when the McGuirl was being carried down by the ebb tide and was proceeding out, especially if steam were escaping, made it look as if she was moving toward the McGuirl. I think the actual situation is plain. That is, that the Greenwich was substantially at rest but working out in the river; that the McGuirl was passing out and being carried down; that as the McGuirl entirely cleared the Cornell tow and received the full effect of the tide,

the amount she was carried to port increased sufficiently to make her strike the corner of the barge in tow of the Greenwich. I think this is also shown by the fact that the McGuirl, after striking the Greenwich, went on across the Greenwich's bow.

It appears that the McGuirl is 90 feet long, the barge is 30 feet wide, and that the starboard forward corner struck amidships. This would leave 45 feet of the McGuirl to starboard of the scow, and 30 feet of the forward half would be across the head of the scow. Unless the McGuirl were proceeding with some rapidity toward the river, after striking such a blow, she could not have swung herself nor the barge around so as to go around, out, and down the river. If she had been standing still and the Greenwich had come up and struck the McGuirl, she could not have helped but swing back in the other direction.

As to the movements of the scows I think there is not much question. The forward scow in tow of the McGuirl struck the Fifty-Second street pier by a slight margin; the after scow came down against the pier. The scows or barges in tow of the Greenwich struck the end of the Fifty-Second street pier, and that makes it evident that the momentum of the scows in tow of the McGuirl was sufficient to carry them out after their hawsers were cast loose, while the ebb tide was taking them down. But the position of the boats also indicates that the accident happened further out in the river than the line of the Fifty-Fifth street pier, and if the McGuirl had already cleared the Cornell tow, then come into collision, and then gone on out into the river around the barge in tow of the Greenwich, it is again evident that the Fifty-Second street pier projects further out than the Fifty-Fifth street pier, and that the Greenwich and her barge at the time of the collision had worked considerably to port from the point to which she would have drifted straight back out of the Cornell tow.

Under the circumstances, the rule that has been read in evidence as to approaching vessels does not add anything to the libelant's rights. The libelant had the right, after giving the slip-signal, to pass out into the river; and after giving the one-signal whistle, she had the right to cross the bow of the Greenwich, whether or not the Greenwich was working up the river, so far as the courses were concerned. If the Greenwich was drifting back and the McGuirl tried to cross her bow, the Greenwich was bound to do nothing to interfere with the McGuirl. On the other hand, if the Greenwich was either proceeding up the river, or was proceeding against the tide, that is, holding her head in the river, whether or not the Cornell tow was immediately above, whether or not she was making up her tow, and whether or not she was trying to hold the barges against the ebb tide, she was bound to recognize the right of the McGuirl to go in front of her, that is, to cross her bow on a one-whistle signal.

That being the case, I think the issue comes down to the single question as to whether or not the McGuirl had the right to attempt to leave the slip, to give a signal of one whistle, and to navigate when she knew that the tow was immediately ahead, that the Greenwich and the barges were drifting down out of the tow, and that because of the

Fifty-Second street dock and the general arrangement of the locality and boats, the Greenwich would be compelled for a short time to retard the movement of the boats under the ebb tide.

The action of the captain of the McGuirl, in pushing around the boat in the last tier of the Cornell tow, and in assuming that the Greenwich would continue to float downstream, indicates what he was attempting to do, and apparently indicates that he assumed that the Greenwich would either continue to drift, or would yield to his one-whistle signal, and that he did not estimate sufficiently the position of the Fifty-Second street pier as an element in the situation. In other words, if the Cornell tow had a right to occupy the river, and if the Greenwich had the right to cut boats out of the tow and make up the tow in front of the pier slips, without reference to whether or not they could obey the ordinary rules of navigation, then the McGuirl had no right to attempt to come out under the circumstances, and the fault is with the McGuirl.

If the McGuirl recognized the right of the Cornell tow and of the Greenwich to get the boats out in a safe manner, and attempted to give a slip-signal and then a one-whistle signal to the Greenwich, before the Greenwich had gotten in a position where it was safe to do so, the responsibility is on the McGuirl.

My opinion is that the McGuirl assumed that the Greenwich was going to get out of the way, and was in too much of a hurry; that the captain of the Greenwich assumed that he could take his time, that all he had to do was to get the boats out and hold them against the tide until he got to a place where he could maneuver them; and that he was also at fault in occupying the river in such a way that he could not recognize a proper signal. I shall hold both boats responsible, under the circumstances, and divide the damage.